**STATE of Iowa, Appellee,**

v.

**Mary Donna TOWNSEND, Appellant.**

**No. 58431.**

Supreme Court of Iowa.

Jan. 21, 1976.

Naomi S. Mercer, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Thomas Mann, Jr., Asst. Atty. Gen. and Ray A. Fenton, County Atty., for appellee.

Submitted to MOORE, C. J., and RAWLINGS, REES, UHLENHOPP and REYNOLDSON, JJ.

REYNOLDSON, Justice.

After pleading guilty to a charge of assault with intent to commit manslaughter, defendant was sentenced to a term not to exceed five years at the women's reformatory. She appeals, asserting a number of alleged errors by trial court in the plea tender and sentencing proceedings. We affirm.

Following a drinking party which lasted into the morning of December 18, 1974, defendant shot Clifford Mickens, a man with whom she had been living. Police, called by neighbors, were unable to talk her out of the house to surrender. They injected tear gas into the home. Defendant from a basement window pointed and fired a handgun in the direction of one of the officers. Eventually she left the house and surrendered.

January 17, 1975, an information was filed charging defendant with assaulting Sergeant R. Babb with intent to commit murder. See § 690.6, The Code. The plea of guilty to the included offense was the result of a plea bargain. This lesser offense

was grounded on § 694.5, The Code ("If any person assault another with intent to commit any felony or crime punishable by imprisonment in the penitentiary * * *.")

The issues raised by defendant's excellent brief are treated in separate divisions which follow.

I. *Does the record contain an affirmative showing of an effective waiver of defendant's privilege against self-incrimination?*

■ We have followed *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274, 279–280 (1969) in holding the record must disclose that defendant made an effective waiver of the privilege against self-incrimination, the right to trial by jury, and the right to confront one's accusers. *Brainard v. State*, 222 N.W.2d 711, 717 (Iowa 1974); *State v. Sisco*, 169 N.W.2d 542 (Iowa 1969).

At the plea hearing the court, seeking in a series of questions to determine defendant's understanding of rights she was waiving, said, "you have the right to be a witness in your own behalf or you can decline to be a witness. Do you understand that?" Defendant answered in the affirmative.

The words used by the court were surely as meaningful to a lay person as the more legalistic language of Amendment 5, United States Constitution (" * * * nor shall be compelled in any criminal case to be a witness against himself * * * ") or the *Boykin* court's shorthand expression, "privilege against compulsory self-incrimination."

We hold defendant understood the constitutional rights she was waiving by her guilty plea.

II. *Did trial court adequately explain the charge to defendant and confirm her understanding of the charge?*

■ The determination of defendant's understanding of the charge has two aspects, the explanation of the charge to defendant and the judge's inquiry into defendant's understanding of the charge.

*State v. Sisco*, supra at 546. We said in *Brainard v. State*, supra, 222 N.W.2d at 715:

"To satisfy the second aspect of the first Sisco requirement the record must show the trial judge personally made sufficient inquiry of the defendant to elicit responses demonstrating the defendant's understanding of the nature of the charge against him."

In this instance the first step above indicated was made inherently difficult by the nature of the charge which resulted from the plea bargaining. This court has noted the crime of assault with intent to commit manslaughter is "somewhat anomalous in some aspects" but nonetheless recognized in this state. *State v. Johnson*, 167 N.W.2d 696, 699 (Iowa 1969).

■ Assault with intent to commit manslaughter is an assault under such circumstances that had death ensued the crime would have been voluntary manslaughter. *State v. Crutcher*, 231 Iowa 418, 425, 1 N.W.2d 195, 199 (1941). It may be an included offense in the crime of assault with intent to commit murder. *State v. Marish*, 198 Iowa 602, 606, 200 N.W. 5, 7 (1924). The latter crime requires the element of malice, the former does not. *State v. Bunn*, 195 Iowa 9, 13, 190 N.W. 155, 157 (1922); *State v. Connor*, 59 Iowa 357, 13 N.W. 327 (1882); *State v. White*, 45 Iowa 325, 327 (1876). "Assault" is accorded its common law meaning, *State v. Vick*, 205 N.W.2d 727, 730–731 (Iowa 1973) and has been defined as "an attempt or offer, with force or violence, to do a corporal hurt to another whether from malice or wantonness, with such circumstances as denote, at the time, an intention to do it, coupled with a present ability to carry such intention into effect." *State v. Lewis*, 173 Iowa 643, 646, 154 N.W. 432, 432–433 (1915); see *State v. Leahy*, 243 Iowa 959, 965, 54 N.W.2d 447, 451 (1952); *State v. Cody*, 94 Iowa 169, 172–173, 62 N.W. 702, 703 (1895).

In the course of the plea hearing this defendant was informed "that manslaugh-

ter is \* \* \* the unlawful killing of a human being without malice, expressed or implied. In other words, you are charged with assault to commit manslaughter." She was told the State would have to prove "1, that you put a person in apprehension of bodily harm. 2, that it was done by pointing a gun at a person or in the direction of this person, Mr. Ron Babb, that you knew he was out there and you recklessly pulled the trigger and the gun went off. And 3, it also happened in Polk County, Iowa."

■ A portion of the above information was imparted to defendant by the assistant county attorney, on the record, in the presence of and at the court's request. See *State v. Williams*, 224 N.W.2d 17, 19 (Iowa 1974). This procedure, while not to be recommended, did not fall within the intent of our admonition in *Sisco*, 169 N.W.2d at 548, that the sentencing court may not abrogate or delegate to anyone its duty to determine defendant's knowledge of the charge.

Thereafter the court by questions ascertained defendant fully understood the charge. The record further discloses she was an articulate person of superior intelligence with considerable college training. See *Sisco*, 169 N.W.2d at 547.

■ It may be conceded the procedure here constituted only minimally sufficient compliance with *Sisco* and *Brainard*. But we will not reverse a judgment based on a guilty plea where trial court did not specifically explain each element of the crime, if under all the circumstances it is apparent the accused understood the nature of the charge. *State v. Hansen*, 221 N.W.2d 274, 276 (Iowa 1974).

Defendant places unwarranted reliance on *State v. Frazier*, 232 N.W.2d 480 (Iowa 1975). There we reversed when trial court ultimately accepted a guilty plea tender to a charge of assault with intent to commit a felony when the county attorney's information never specified the "felony". Nor was the alleged felony ever disclosed to defendant at the plea hearing. This is the controlling distinction between that situation and the case *sub judice*.

Upon exploration of this issue, we find no error.

III. *Did trial court fail to determine whether there was a factual basis for the guilty plea?*

The plea hearing record discloses trial court considered the minutes of testimony attached to the information, which provided the required factual basis. The assistant county attorney informed the court, on the record, the officer "would testify he saw the gun come out, aimed at him. He ducked down behind the car. The gun was fired—or aimed in his direction \* \* \*."

Defendant acknowledged she fired the gun, she "knew the police were out there," and knew "it was dangerous to fire the gun outside with them out there." While she variously stated she had been drinking, was blinded by tear gas, couldn't breathe, and didn't intend to shoot anyone, she admitted she knew how to use the gun. Although she had been drinking she "remember[ed] everything that happened." She had already twice wounded Mickens with the same gun. She knew the police had ordered her out of the house.

■ This jurisdiction has no requirement that trial court in all cases must wring from defendant a detailed confession satisfying each element of the crime charged. *Hansen*, supra, 221 N.W.2d at 276, and citations. An accused may voluntarily, knowingly and understandingly consent to the imposition of a prison sentence even if she is unwilling or unable to admit her participation in the acts constituting the crime. *North Carolina v. Alford*, 400 U.S. 25, 37, 91 S.Ct. 160, 167, 27 L.Ed.2d 162, 171 (1970); *Young v. Brewer*, 190 N.W.2d 434, 436, 438 (Iowa 1971).

■ Obviously trial court's determination of a factual basis for the guilty plea may, under the circumstances evident in this plea

hearing, proceed despite defendant's equivocations.

■■■ Express intent to kill is not a necessary element of manslaughter. A showing of reckless indifference to the lives and safety of others is sufficient. *State v. Moore,* 129 Iowa 514, 517–518, 106 N.W. 16, 17 (1906). In order to establish the requisite factual basis for assault with intent to commit manslaughter, it was not necessary to establish defendant intended to shoot officer Babb, but only that she consciously pointed a gun at the police and fired it with reckless indifference toward their lives. This was adequately demonstrated in the plea hearing record.

IV. *Did trial court err in failing to inform defendant at the sentencing hearing of its intention not to follow the county attorney's probation recommendation and in failing to advise defendant of her right to withdraw her guilty plea?*

The plea bargain was made a part of the record at the plea hearing. The State had promised it would recommend the charge be reduced. This was accomplished upon the court's approval. The State had promised it would recommend probation. It kept this promise. The court then promptly and carefully ascertained that defendant understood it was not bound by the recommendation but could impose the maximum sentence. The judge then again asked her if she wanted to plead guilty and she again answered in the affirmative. The court deferred acceptance of the recommendation pending a presentence report.

At sentencing hearing defendant was represented by a different attorney. A different assistant county attorney was present. Apparently neither knew of the probation recommendation made by the State to the same judge at the prior proceeding. But defendant offered this information, and the judge stated on the record "I will accept that as being fact." But he

again warned defendant he was not bound by the recommendation. Defendant was also forewarned trial court felt compelled "to give you a prison sentence."

Trial court then offered defendant and her attorney an opportunity to address the court before sentence was pronounced. Both indicated they had nothing to add. Trial court imposed the five-year sentence at the women's reformatory.

Defendant asserts the sentencing court, upon deciding not to follow the State's recommendation, should have affirmatively offered defendant an opportunity to withdraw her guilty plea, citing, *inter alia, State v. Runge,* 228 N.W.2d 35 (Iowa 1975) and *State v. Fisher,* 223 N.W.2d 243 (Iowa 1974).

In *Runge,* supra, as in a federal decision relied on by defendant, *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), sentence recommendations promised by the State were never made on the record. The bargain was not kept. Here the record discloses the agreement was performed by the State and ultimately considered by the court. In *Fisher,* supra, 223 N.W.2d at 246, we noted "prior to entry of judgment trial court, having elected not to honor the aforesaid plea bargain, neither so advised defendant nor accorded him related opportunity to stand on his guilty plea or move to withdraw same." Such is not the case here where defendant and her attorney, prior to judgment, knew the sentencing court was not going to follow the State's recommendation but nonetheless did not move to withdraw the guilty plea. The interpretation of *Fisher* contended for by defendant was rejected by the majority of this court in *State v. Parrish,* 232 N.W.2d 511 (Iowa 1975).

■■■ The right to withdraw a guilty plea tendered and accepted must necessarily be grounded on manifest injustice, in this instance the concept it was involuntarily tendered, having been based on unfulfilled promises or inducements. Here the record

affirmatively discloses defendant agreed to plead guilty to the lesser offense if the Staté 1) would recommend the charge be so reduced and 2) recommend probation. There is not the slightest indication the assistant county attorney made any representation relating to the sentence which would be imposed by the court. See § 4.3(a), ABA Standards, The Prosecution Function p. 108 ("It is unprofessional conduct for a prosecutor to make any promise or commitment concerning the sentence which will be imposed or concerning a suspension of sentence; he may properly advise the defense what position he will take concerning disposition.")

The record further affirmatively shows defendant could not have been induced by a plea bargain that the recommendation would be followed: the court directly and forcefully told her, before the plea tender, he would not be so bound.

■ We hold the plea in this respect was voluntarily tendered. Trial court was not obligated to advise defendant and her counsel the guilty plea could be withdrawn. *State v. Parrish,* supra.

V. *Was defendant deprived of effective assistance of counsel?*

■ Defendant contends she was denied effective assistance of counsel because she was represented at the sentencing hearing by a different attorney who apparently was unfamiliar with the plea bargain.

The first problem with this assertion is the void in the record as to why the substitution occurred. Defendant may have discharged the first attorney and retained the second. A more likely explanation, since the record does not disclose a withdrawal by the first counsel, is that the second was associated with the first. Defendant is represented here by still another lawyer.

The record does disclose the sentencing hearing counsel examined the presentence report and advised defendant regarding it. He reminded the court of the plea bargain sentence recommendation as related to him by defendant.

We do not approve the break in continuity in representation of defendant, especially in view of the apparent lack of communication between counsel. Nor does this record disclose the sentencing hearing attorney's performance to be a stellar example of advocacy. On the other hand, we believe under all the circumstances counsel's performance was within the range of normal competency. See *State v. Dee,* 218 N.W.2d 561, 563 (Iowa 1974); *Ogden v. State,* 215 N.W.2d 335, 337 (Iowa 1974); *State v. Massey,* 207 N.W.2d 777, 780 (Iowa 1973).

■ In the final analysis, the overall representation of defendant may be judged in light of the result. Although not directly involved in the plea bargain, charges arising out of shooting and twice wounding Mickens were dismissed. Charges relating to placing the police under gunfire were reduced from assault with intent to commit murder (§ 690.6, The Code, maximum penalty 30 years imprisonment) to "assault with intent to commit a felony, to-wit, manslaughter" (§ 694.5, The Code, maximum penalty 5 years imprisonment). A recommendation for probation was obtained from the county attorney, albeit not accepted by the court. Under the circumstances, there was a limit to the result any defense counsel might reasonably be expected to obtain.

VI. *Did trial court abuse its discretion in sentencing defendant to imprisonment?*

Defendant argues she was sentenced to imprisonment because she refused to sign a blanket release of information for the person charged with preparing the presentence report and was consequently penalized for asserting her constitutional right to privacy.

The record affirmatively shows the presentence report was before the court and

considered in fixing sentence. After defendant and her counsel had examined it, defendant objected to its contents only in two inconsequential and minor factual particulars.

The presentence report is here as a part of the record in this appeal. Section 789A.5, The Code. It discloses no prior criminal record. It and related papers also indicate defendant was engaged in heavy drinking and promiscuous behavior at age sixteen. Psychiatric evaluation at the time indicated a diagnosis of sociopathic personality. Her work record indicates instability. Eight months before the events which led to defendant's arrest she began living with Mickens. According to defendant, he had been imprisoned on two occasions for robbery and attempted robbery. At the time of presentence investigation, he was "being held as a suspect in the Polk county jail, for the crime of robbery with aggravation."

A police report accompanying the investigative report indicated a purse found in defendant's home following the shooting contained a ticket "issued by Off. Buchanan to subject named Cheryl Logsdon issued at 0025 this date. Townsend was recipiant [sic] of this ticket and it has been re-issued. Also a wad of $100.00 bills were found in purse $2000.00. This was brought to station for safekeeping along with purse." The report shows a charge of operating a motor vehicle without a driver's license was subsequently dismissed along with other charges. Defendant carried the gun when she drove her companion and a friend back to her home following the party. In listing her assets to the presentence investigator she made no mention of the $2000.

The investigator recommended defendant's placement " * * * in a semi-structured environment, such as offered at the Women's Facility, in Des Moines, Iowa * * *."

The sentencing court also stated on the record he was taking into consideration the fact the offense defendant pleaded guilty to was a " * * * serious crime, a crime of violence * * *."

▪ We are not required to determine here whether defendant's refusal to authorize investigation into certain aspects of her prior activities might properly be considered by sentencing court under the criteria of "character and propensities and chances of * * * reform," *State v. Cupples*, 260 Iowa 1192, 1197, 152 N.W.2d 277, 280 (1967), despite her claim of violation of her constitutional right to privacy. There is no affirmative showing trial court considered defendant's refusal in fixing sentence. The majority of this court only recently affirmed an appeal from sentencing procedures on the ground it could be assumed on a silent record trial court employed the proper criteria, noting our "growing reluctance to interfere with the trial court's discretion." *State v. Peckenschneider*, 236 N.W.2d 344 (Iowa 1975).

The matters in the presentence investigative report were unchallenged as to accuracy except in two minor particulars. See *State v. Waterman*, 217 N.W.2d 621, 623 (Iowa 1974). The report was properly considered by sentencing court. *State v. Waterman*, supra; *State v. Stakenburg*, 215 N.W.2d 265, 267 (Iowa 1974); *State v. Cupples*, supra, 260 Iowa at 1196–1197, 152 N.W.2d at 279–280.

▪ In a final assertion of error in sentencing hearing, defendant argues the court again should have ascertained there was a factual basis for the plea and that it was voluntarily made. We have now rejected the contention a *Sisco* interrogation must be repeated at time of sentencing. *State v. Parrish*, supra, 232 N.W.2d at 514; *State v. Bell*, 210 N.W.2d 423, 426 (Iowa 1973).

We find no reversible error. The judgment below is affirmed.

Affirmed.

MOORE, C. J., and REES and UHLEN-HOPP, JJ., concur.

RAWLINGS, J., dissents.

RAWLINGS, Justice (dissenting).

I cannot agree with the reasoning and result reached in Division IV of the majority opinion.

In support of this position see dissent in *State v. Parrish,* 232 N.W.2d 511, 516–517 (Iowa 1975).

I would reverse and remand with instructions (1) the sentence from which appeal is here taken be set aside; (2) defendant be afforded meaningful opportunity to withdraw her guilty plea; and (3) for further appropriate proceedings.